**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| THERESA MARIE KENNEDY, | : | |
| Plaintiff, | : | |
| vs. | : | CA 11-0630-C |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying

_____

[1] The parties waived oral argument in this case. (Doc. 16; *see* Doc. 19.)

plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to cervical spondylosis and radiculopathy, fibromyalgia, and bipolar II disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.**
>
> **2.    The claimant has not engaged in substantial gainful activity since August 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

The claimant worked after the alleged disability onset date; however, this work was an unsuccessful work attempt.

> **3.    The claimant has the following severe impairments: spondylosis, cervical spine radiculopathy, fibromyalgia, history of substance abuse in reported remission and Bipolar II disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> **4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.        .        .

> **5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving  no climbing of ladders, ropes, or scaffolds; rarely climbing ramps or stairs;**

---

[2]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**occasional stooping or crouching; no kneeling or crawling at all; no use of arms for overhead reaching; occasional bending at waist; limited to short simple instructions; minimal contact with the general public; rare changes in the work setting (10% of the workday or less). Due to pain and psychological factors the claimant would have mild to moderate deficits in concentration, persistence and pace which would cause her to be off task or at a non-productive pace up to 5% of the workday.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant testified . . . [that[ [s]he worked part time for 3 months from July to October 2010 painting. She was fired because she could not lift ladders. Prior to that she was injured on the job and drew Worker's Compensation and found out she had degenerative disc disease. . . . She stated that she could not go to the doctor because she has no health insurance. Her back has been giving her problems since 2005. She injured her back doing housework in 2008 and found out she had degenerative disc disease. No surgery was done but she did physical therapy for 13 weeks and they released her. She takes Advil and Tylenol for pain. She estimated that she could sit for 10 minutes, stand for about 10 minutes and

3

walk for 10 minutes. At the store, she leans on the cart or gets her son to go for her. She can pick up her new six-pound grandson and hold him for about 5 minutes. No surgery has been suggested. She stated that she worked some in 2010 because she had to survive. She could not perform the job and was let go. She rated her back pain an eight on average on a scale of 1-10 with 10 being the worst. She takes Xanax for anxiety and panic attacks. . . . Her son helps her with chores. She gets about 9 hours of sleep at night and 6 during the day. . . . She cannot sit through a church service. . . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

On August 28, 2008, Springhill Medical Center emergency room personnel saw the claimant for complaints of neck and back pain. . . . On exam of the back, there was some tenderness to palpation along the trapezius ridge going down to her right paraspinal region. However, there was no redness or swelling or signs of rash. She was able to lift her arm up over her head but this caused a worsening of the pain. She had a strong 5/5 grip strength of the upper extremities with normal pulses bilaterally. The diagnoses were cervical radiculopathy and back pain. She was given Toradol IM along with Decadron IM.

On September 1, 2008, South Baldwin Regional Medical Center personnel saw the claimant with complaints of severe back and neck pain. This was a result of back and neck injury about 2 weeks [earlier]. The claimant was histrionic and had slurring of speech. . . . On exam, she was in moderate distress. There was muscle spasm of the neck. Back exam revealed muscle spasm and decreased range of motion. The impression was back pain, acute myofascial strain and muscle spasm. Opiates test was positive. A prescription was given and she was discharged home in stable and improved condition.

.     .     .

Encore Rehabilitation, Inc. records indicate treatment from August 28, 2008 to September 17, 2008. She underwent physical therapy for cervical, thoracic and lumbar spine. She was treated with E-Stim, heat, ultrasound and joint/soft tissue mobilization. At the end of therapy, the claimant

reported no change in pain at all. She reported that she was getting sharp pain "all up and down my body." Musculoskeletal findings were that there was no significant change in range of motion on command. However, functional range of motion in flexion and rotation appeared close to normal with minimal to no spasms in the right paraspinal musculature. She was hypersensitive to touch during stimulation. It was difficult to determine objective changes due to inconsistent responses during and after treatment.

On September 19, 2008, Foley Imaging Open MRI personnel performed an MRI of the cervical spine. The conclusion was mild degenerative disc and uncal joint changes at C5-6 and C6-7. There was straightening of the usually lordotic cervical curvature, suggesting muscle spasm.

On September 5, 2008, Dr. Terry Taylor with Industrial Medical West saw the claimant with complaints of burning pain in her neck and down her back. She also reported numbness in the right arm. . . . During the exam, she exhibited some bizarre behavior, talking loudly and repeating things. She had difficulty remembering when she became injured and when she had been treated at several emergency rooms. She was able to move with slight difficulty during the exam. She reported stiffness in the neck and lower back. When asked to see her medication, she got up from sitting on the exam table, squatted to get her purse off the floor and bent at the waist greater than 90 degrees. Movement of the cervical spine did not cause pain. Range of motion was normal. Tenderness was present. Upper extremities strength was 5/5. Heel standing and walking could be performed, as well as toe standing and walking. Scoliosis was not present. Straight leg raise was negative bilaterally. Strength in the lower extremities was 5/5 and tenderness was present. X-rays of the cervical spine, thoracic spine and lumbar spine were all normal. The diagnoses were neck pain, thoracic spine pain and low back pain. She was given a prescription for five physical therapy visits over the next two weeks. She was not given any additional medication. There was a history of problems [with] alcohol and she was taking medication from the emergency room. Her work status was restricted to no lifting over 10 pounds, no repetitive bending or twisting at the waist and no overhead reaching. On September 18, 2008, she reported that Naproxen was not helping. She exhibited symptom[] magnification. . . . She was given a prescription for Ultracet. Physical therapy was not given as she reported that the 5 visits did not help and the therapist noted problems and complaints to be inconsistent. On September 26, 2008, she reported minimal change in her symptoms and requested narcotics. She stated that she dropped her valium in the kitchen sink and wanted more. An MRI showed degenerative changes but

the exam showed no focal neuro deficits. She was loud and verbally abusive. The claimant reported that rest, medication and physical therapy did not help. Dr. Taylor explained that he did not have any other treatment to offer her. The diagnoses remained neck pain, thoracic spine pain and low back pain. She was discharged from the clinic. Dr. Taylor stated that the cause of this problem did not appear to be related to work activities, as her degenerative disk changes were pre-existing. She was to returned to regular duty as of this date.

.    .    .

On January 14, 2010, Dr. Raymond R. Fletcher, a board certified orthopedic surgeon examined the claimant at the request of the Social Security Administration. Dr. Fletcher stated that the claimant had chronic spinal pain. Her symptoms had progressed over several years but significantly exacerbated during a work injury on August 14, 2008. She had been unemployed since being laid off in October 2008. She was currently on unemployment and actively looking for employment. She reported that she was unable to find a job within her physical ability. . . . Dr. Fletcher stated that his exam revealed significant cervical impairment, multiple myofascial findings and significant emotional lability. The cervical MRI scan showed hypertrophic spondylosis at C5/6 and C6/7, which correlated with the right cervical radiculitis. Her subjective complaints were supported by several abnormal musculoskeletal and medical findings. The impressions were chronic cervical pain and right cervical radiculitis; spondylosis; chronic thoracic-lumbar pain with right paraspinal spasm, spondylosis; tension headaches and fibromyalgia. Dr. Fletcher stated that the claimant would have great difficulty with activities requiring bending, lifting, stooping, crawling, and climbing and with prolonged standing, walking and sitting. She would have great difficulty with repeated use of the arms and hands overhead and repetitive use of the upper right extremity. Dr. Fletcher opined that any work environment was incompatible with the musculoskeletal and medical problems discussed. Dr. Fletcher stated that her depression and anxiety were significant obstacles to gainful employment.

.    .    .

As for the opinion evidence, less weight is given to Dr. Fletcher's opinion that any work environment was incompatible with the claimant's musculoskeletal and medical problems. Dr. Fletcher saw the claimant on a one-time basis only. While the claimant does indeed present with some impairments and limitations, the record as a whole does not support the

6

limitations to the degree that Dr. Fletcher reports. Previous examinations, for the most part only indicated some tenderness but little to no limitation in range of motion. Dr. Fletcher's statement that the claimant's symptoms had progressed over several years but significantly exacerbated during a work injury on August 14, 2008 is not supported by objective evidence. Dr. Taylor stated that an MRI done on September 26, 2008, showed degenerative changes but his exam showed no focal neuro deficits. Furthermore, the claimant's subjective complaints appear to be exaggerated. There was evidence that she wanted to appear in a worse light than was actually the case. Encore Rehabilitation personnel noted that it was difficult to determine objective changes due to inconsistent responses during and after treatments. During her physical therapy visits, the therapist noted problems and complaints to be inconsistent. Therefore, further physical therapy was not ordered. Dr. Taylor reported that during his exam, she was able to move with only slight difficulty but reported stiffness in the neck and lower back. When Dr. Taylor asked to see her medication, she got up from sitting on the exam table, squatted to get her purse off the floor, and bent at the waist greater than 90 degrees. He noted that movement of the cervical spine did not cause pain; her range of motion was normal with tenderness present and upper extremities and lower extremities strength was 5/5. Dr. Taylor stated that the cause of her problem did not appear to be related to work activities, as her degenerative disk changes were pre-existing. She was returned to regular duty as of this date. Giving Dr. Fletcher the benefit of the doubt[,] however, it does appear that the claimant's limitations might have increased somewhat since Dr. Taylor's exam. Nevertheless, the Administrative Law Judge is convinced that her limitations have not progressed to the degree Dr. Fletcher reports.

Accordingly, the medical record as a whole is consistent with and supports that the claimant would not be precluded from performing light exertional work activity with the limitations listed in the beginning of this finding.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a painter, cashier, fast food cook, production assembler and telephone operator. These jobs are semi-skilled to skilled level jobs in existence in the national economy. Inasmuch as the claimant's current residual functional capacity is for light work at the unskilled level, the claimant is unable to perform past relevant work.

**7.      The claimant was born on February 25, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      The claimant has acquired job skills from past relevant work (20 CFR 404.1568 and 416.968).**

.       .       .

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired job skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).**

.       .       .

The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: assembler, small products, DOT # 706.684-022, unskilled light with 21,272 jobs in existence in the national economy and 235 in the state of Alabama; assembler, electrical parts, DOT # 729.687-010 with 90,378 jobs in existence in the national economy and 1,079 in the state of Alabama; sorter, boot/shoe, DOT # 735.587-010 with 25,577 jobs in existence in the national economy and 456 in the state of Alabama; inspector/hand packager, DOT # 559.687-074 with 25,233 jobs in existence in the national economy and 450 in the state of Alabama[;] sorter, agriculture, DOT # 529.687-186 with 10,747 jobs in existence in the national economy and 278 in the state of Alabama; content checker, DOT # 522.667-010 with 2,273 jobs in existence in the national economy and 41 in the state of Alabama[;] and [] assembler[,] garment, DOT # 789.687-046 with 3,223 jobs in existence in the national economy and 86 in the state of Alabama.

The undersigned notes that other questions were posed to the vocational expert that were based on assumptions as to the validity of the claimant's testimony regarding symptoms found by the undersigned to be not fully

credible and not supported by objective testing or the record as a whole. The undersigned, therefore, finds that vocational expert's response to same of no probative value to a disposition in this matter.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Accordingly, although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.19.

**11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 12, 14, 14-15, 15, 16, 17-19 & 19-20 (internal citations omitted).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id*. at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). The

ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the ALJ erred as a matter of law in failing to apply the proper legal standard in evaluating her subjective pain complaints and also erred as a matter of law in rejecting the opinion of the consultative examiner, Dr. Raymond Fletcher. Underlying both arguments is the ever-present argument that the ALJ's RFC determination is not supported by substantial evidence.

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . .

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

impairments.'" *Hanna v. Astrue*, 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. § 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a

claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. § 416.945(a)(4).

> (b)  *Physical abilities.*  When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.
>
> (c)  *Mental abilities.*  When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.
>
> (d)  *Other abilities affected by impairment(s).*  Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of

the hearing officer's rejection of such opinion,[4] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **<u>nothing</u>** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[5] *Compare, e.g.,*

---

[4]    An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[5]    In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue,* Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green,* while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

    Therefore, decisions, such as *Stephens v. Astrue,* No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require (Continued)

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the

ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds

occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six

hours in an eight hour workday, [] when the record does not include an evaluation of

Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting,

bending, or carrying.") *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for

federal courts to conduct a meaningful review of an ALJ's decision. For example, in

*Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of
> work at all exertional levels but that he was limited to 'occasional hand
> and finger movements, overhead reaching, and occasional gross and fine

---

that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a
physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point
to a PCE which supported his fifth-step determination that Plaintiff can perform light work
activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability
> examiner, which is entitled to no weight whatsoever, there [was] simply no basis
> upon which this court [could] find that the ALJ's light work RFC determination
> [was] supported by substantial evidence. [That] record [did] not reveal evidence
> that would support an inference that Plaintiff [could] perform the requirements
> of light work, and certainly an ALJ's RFC determination must be supported by
> substantial and tangible evidence, not mere speculation regarding what the
> evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart,* 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for
making a RFC determination, and he must link his findings to substantial evidence in the record
and explain his decision.")).

manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .

The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .

The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.

**The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions**

**reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner — using "the record as a whole" — on appeal, but rather, must be clearly set forth in the ALJ's decision.  *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that

the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

The Court now considers the issues raised by plaintiff, namely whether the ALJ erred as a matter of law in failing to apply the proper legal standard in evaluating her subjective pain complaints and also whether the ALJ erred as a matter of law in rejecting the opinion of the consultative examiner, Dr. Raymond Fletcher. In considering the first of these two issues, the undersigned also considers the underlying issue of whether the ALJ's RFC determination is supported by substantial evidence and, more specifically, whether the ALJ properly linked her RFC finding to substantial evidence in the record.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[6] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

---

[6] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995).  In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ ***must*** consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

In this case, the ALJ clearly recognized that plaintiff's impairments met the pain standard (*see* Tr. 15 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that her subjective pain complaints were not entirely credible (*see id*. ("[T]he claimant's statements concerning the intensity; persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.")). Though the ALJ made a specific credibility finding, *see Chater, supra,* at 1561, and in doing so specifically considered the objective medical evidence of record (*see* Tr. 15-18), what she failed to do is consider the other factors/evidence set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c). (*See id.*) Because the ALJ in this case made no mention of the factors set forth in §§ 404.1529(c) and 416.929(c) in assessing the credibility of the claimant's subjective complaints of pain (*see id*), this Court finds that she wholly failed to evaluate the credibility of Kennedy's subjective complaints of pain in the manner prescribed by the Eleventh Circuit, *see Leiter, supra.* Inasmuch as a proper credibility determination is critical in this case, this cause is due to be reversed and remanded for further consideration not inconsistent with this decision.

The ALJ's improper credibility determination in this case, of course, also impacts the underlying RFC determination in this case inasmuch as the ALJ has linked both of those determinations. (*See* Tr. 15 ("[T]he claimant's statements concerning the intensity; persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.")).  The ALJ's

"physical" RFC assessment was for "**light work as defined in 20 CFR 404.1567(b) and 416.967(b)[7] involving  no climbing of ladders, ropes, or scaffolds; rarely climbing ramps or stairs; occasional stooping or crouching; no kneeling or crawling at all; no use of arms for overhead reaching; occasional bending at waist**[.]" (Tr. 14 (footnote added).) Because the ALJ's improper credibility determination brings back into "play" the plaintiff's testimony and such testimony is decidedly inconsistent with the ability to perform the lifting, standing, walking and sitting requirements of light work (*see* Tr. 34-36 (plaintiff's testimony that she can sit, stand and walk for about 10 minutes each before changing position and that she could hold her 6-pound grandson for only 5 minutes)), obviously this Court is unable to find the Commissioner's RFC assessment supported by substantial evidence at this point in time.

The Court uses this discussion to also underscore the fact that the ALJ nowhere in her decision links her "physical" RFC assessment to specific evidence in the record which bears on plaintiff's ability to perform the physical requirements of work. For instance, while the plaintiff's testimony that she could only hold her 6-pound grandson for five minutes suggests that she cannot perform the lifting and carrying requirements of light work, *see, e.g.,* 20 C.F.R. § 404.1567(b), particularly when combined with Dr. Raymond Fletcher's determination that plaintiff can perform only sedentary work (Tr.

---

[7]      "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R.  §§ 404.1567(b) & 416.967(b) (2012).

287),[8] and even the disability examiner's January 21, 2010 findings that plaintiff can

frequently and occasionally lift and carry up to 10 pounds only (Tr. 63), the ALJ

---

[8]     The undersigned is also concerned with the manner in which the ALJ analyzed the opinion and findings of Dr. Fletcher, an orthopedic surgeon to whom plaintiff was referred for consultative examination by the Social Security Administration. (*Compare* Tr. 18 *with* Tr. 284-289.)

> As for the opinion evidence, less weight is given to Dr. Fletcher's opinion that any work environment was incompatible with the claimant's musculoskeletal and medical problems. Dr. Fletcher saw the claimant on a one-time basis only. While the claimant does indeed present with some impairments and limitations, the record as a whole does not support limitations to the degree that Dr. Fletcher reports. Previous examinations, for the most part only indicated some tenderness but little to no limitation in range of motion. Dr. Fletcher's statement that the claimant's symptoms had progressed over several years but significantly exacerbated during a work injury on August 14, 2008 is not supported by objective evidence. Dr. Taylor stated that an MRI done on September 26, 2008, showed degenerative changes but his exam showed no focal neuro deficits. Furthermore, the claimant's subjective complaints appear to be exaggerated. There was evidence that she wanted to appear in a worse light than was actually the case. Encore Rehabilitation personnel noted that it was difficult to determine objective changes due to inconsistent responses during and after treatments. During her physical therapy visits, the therapist noted problems and complaints to be inconsistent. Therefore, further physical therapy was not ordered. Dr. Taylor reported that during his exam, she was able to move with only slight difficulty but reported stiffness in the neck and lower back. When Dr. Taylor asked to see her medication, she got up from sitting on the exam table, squatted to get her purse off the floor, and bent at the waist greater than 90 degrees. He noted that movement of the cervical spine did not cause pain; her range of motion was normal with tenderness present and upper extremities and lower extremities strength was 5/5. Dr. Taylor stated that the cause of her problem did not appear to be related to work activities, as her degenerative disk changes were pre-existing. She was returned to regular duty as of this date. Giving Dr. Fletcher the benefit of the doubt[,] however, it does appear that the claimant's limitations might have increased somewhat since Dr. Taylor's exam. Nevertheless, the Administrative Law Judge is convinced that her limitations have not progressed to the degree Dr. Fletcher reports.

(*Id.* at 18.) While it is clear from the foregoing that the ALJ accorded "some" weight to Dr. Fletcher's opinions, *see, e.g., Kahle v. Commissioner of Social Security,* 2012 WL 612467, * 8 (M.D. Fla. Feb. 27, 2012) ("While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight that the opinion of a non-examining (Continued)

nowhere in her decision specifically links her finding that plaintiff can perform the lifting and carrying requirements of light work (i.e., the ability to frequently lift and carry objects weighing up to 10 pounds and occasionally lift and carry objects weighing up to 20 pounds) to evidence in the record which establish these abilities (*see* Tr. 14-18). Accordingly, this cause is due to remanded for this additional reason as well. *See Thomas v. Astrue,* 2012 WL 1145211 (S.D. Ala. Apr. 5, 2012).

In light of the foregoing, the undersigned finds that the Commissioner has not carried his fifth-step burden such that a remand of this case is warranted.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625,

---

physician."), the problem in this case is that the findings/limitations indicated by Dr. Fletcher that the ALJ wants to ignore, in favor of clinical findings (including range of motion findings) made by a worker's compensation doctor (Taylor) more than two years earlier, are the objectively measurable range of motion findings made by the consulting orthopedic surgeon (*compare* Tr. 18 *with* Tr. 288-289). Moreover, at the same time, the ALJ concedes that "claimant's limitations might have increased somewhat since Dr. Taylor's exam[]" (Tr. 18). The undersigned finds the ALJ's circular analysis in this regard somewhat confounding; however, remand will provide the ALJ another opportunity to address this issue and the Court's concerns with the foregoing analysis.

125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

    **DONE** and **ORDERED** this the 13th day of July, 2012.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**